

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. P. Lockhart
Board of Insurance Commissioners
Austin, Texas.

Dear Sir:

> Opinion No. O-3765
> Re: Section 17, Senate Bill 135,
> Acts 46th Legislature, pp.
> 401, et seq.

This department has received your request for an opinion. The question presented has been considered.

We quote the body of your letter:

"The beneficiary of the proceeds of a policy of insurance originally issued by the Texas Benevolent Association, a statewide mutual assessment company reinsured by the Texas Independence Life Insurance Company, another statewide mutual assessment life insurance company operating by virtue of its qualification under and in compliance with the provisions of House Bill 303, Acts of the 43rd Legislature, and Senate Bill 135, Acts of the 46th Legislature, has refused to accept the amount tendered by the said Texas Independence Life Insurance Company of Austin, Texas.

"The said Texas Independence Life Insurance Company, following the passage of Senate Bill 135 which requires all mutual insurance companies to pay valid claims in full, took advantage of the provisions of Section 17 of said Senate Bill 135 and made such adjustments as were deemed necessary in the relation of premiums to benefits, and has paid claims arising on policies in force prior to the enactment of said Senate Bill 135 under its provisions.

"You are therefore requested to advise the Board of Insurance Commissioners if, in your opinion, companies such as the Texas Independence Life Insurance Company legally may increase rates or reduce benefits in accordance with the provi-

712

sions of Section 17 of Senate Bill 135, Acts
of the 46th Legislature. . . ."

Section 17, Senate Bill 135, Acts Forty-sixth
Legislature, p. 409, provides:

"Payments on Certificates Already in Force.
If the payments of the members of any associa-
tion coming within the scope of this Act, on
certificates issued and in force when this Act
takes effect, or the reinsurance or renewals of
such certificates, shall prove insufficient to
pay matured death and disability claims in the
maximum amount stated in such policies or cer-
tificates, and to provide for the creation and
maintenance of the funds required by its laws,
such association may with the approval of the
Board of Insurance Commissioners and after prop-
er hearing before said Board provide for meeting
such deficiency by additional, increased, or
extra rates of payment, or by reduction in the
maximum benefits stated in such policies or cer-
tificates then in force, or by both such increased
payments and reduced maximum benefits, or the
members may be given the option of agreeing to
reduced maximum benefits, or of making increased
payments."

Section 2 of said enactment gives the following
definitions of certain terms used therein:

"'Member' shall include policyholders or
any persons insured by an association, by what-
soever means the insurance may be effective.

"'Certificate' shall include any insurance
policy or contract of insurance, certificate of
membership or other document through which in-
surance is effected or evidenced.

"'Association' shall refer to and include
all types of organizations, corporations, firms,
associations, or groups subject to the provisions
of this Act."

It is observed that Section 17 is captioned "Pay-
ment on Certificates Already in Force." The section then

Honorable O. P. Lockhart, Page 3

stipulates how an association may act to meet certain contingencies arising from its operations.  Thusly: "If the payments of the members . . . prove insufficient to pay matured death and disability claims in the maximum amount stated in such policies or certificates" then the association, with the approval of the Insurance Board, may "provide for meeting such deficiency by additional, increased, or extra rates of (premium) payment, or by reduction in the maximum benefits stated in such policies or certificates then in force, or by both such increased payments and reduced maximum benefits, or the members may be given the option of agreeing to reduced maximum benefits, or of making increased payments."(Underscoring ours)

Section 13 of the same Act provides:

"It is the primary purpose of this Act to secure to the members of the associations and their beneficiaries the full and prompt payment of all claims according to the maximum benefit provided in their certificates. . . ." (Underscoring ours)

The provisions of Sections 13 and 17 of the Act seem to constitute an anomaly.  The language of each section seems in direct variance with that of the other.  This, however, can be explained.

Section 36 of the Act, the emergency clause, states that the "present laws governing life, health and accident assessment insurance, . . . do not adequately protect the members from loss through unwholesome, unsound or fraudulent practices" therefore, an emergency and an imperative public necessity was declared to exist.

The Legislature apparently realized that not all insurance companies were financially able to give "full and prompt payment of all claims according to the maximum benefit provided in their certificates."

The Legislature, therefore, reasoned that there must be some provision incorporated in the Act whereby those certain financially unsound associations or companies could go back into the past and make any necessary changes with regard to its old members and certificate holders. They must be allowed to put their houses in order.

Consequently Section 17 was placed in Senate Bill 135 so that the old members of any association within the scope of the Act could be protected also from "loss through unwholesome, unsound or fraudulent practices" by having new, "additional, increased, or extra rates of payment, or by reduction in the maximum benefits. . . or by both . . ." levied against them so as to meet any "deficiency" which might prevent their association from attaining the ultimate aim of being financially able to meet its valid obligations in the future by giving "full and prompt payment of all claims."

We find no anomaly between the respective provisions of the two sections. The Legislature desired and intended that all members of an association, both as to the past as well as the future, should benefit by the provisions of Senate Bill 135.

Section 16, Article I, (Bill of Rights) of the Texas Constitution, provides that:

"No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

A retroactive or retrospective statute is one which reaches back to impose or attach new rights, new duties, new obligations, and new liabilities on past transactions or considerations. 6 R. C. L., p. 340, Cooley's Constitutional Limitations, p. 771.

The court in Turbeville v. Gowdy, (C.C.A.) 272 S. W. 559, stated:

"A retroactive law, in the sense of the Constitution . . . which prohibits such acts, is one made that affects acts or rights accruing before it came into force. A statute is retroactive which takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or adopts a new disability in respect to transactions or considerations already passed."

It is a well-settled rule of statutory construction that statutes are to be treated as operating prospectively unless the contrary is apparent from the language of

Honorable O. P. Lockhart, Page 5

the statute.  Life Ins. Co. v. Ray, 50 Tex. 511, at p. 519;
1 Couch on Insurance, p. 308, Cooley's Constitutional Limi-
tations, p. 772.

The language of Section 17, Senate Bill 135, plain-
ly reveals the legislative intent that the provisions of said
section should operate retrospectively. As: "certificates issued
and in force when this Act takes effect" shall be subject to
"increased, or extra rates of payment, or by reduction in the
maximum benefits stated in such policies or certificates then
in force." (Underscoring ours)

Mr Justice Phillips in the case of Cox v. Robison,
105 Tex. 426, at page 437, said:

"Had the authors of this provision (of the Texas
Constitution) intended it to have a prospective
operation and effect they could, and it is fair
to assume that they would, have used terms whose
undoubted common use and meaning would have made
that intention plain, instead of a term whose usual
significance is not prospective, and to which we
must attach a use it does not ordinarily have and
impart a meaning it does not commonly bear, in order
to give the provision a prospective interpretation."
(Parenthetical insertion ours)

The statement by Mr. Justice Phillips is applicable
to our situation.  There appears a clear legislative intention
that the provisions of Section 17 should operate retrospectively.

In the case of Gastring v. Sovereign Camp, W.O.W.,
278 S. W. 310, Chief Justice Fly of the Court of Civil Appeals,
states that:

". . . all laws retroactive in their na-
ture do not come under the constitutional con-
demnation."

The Chief Justice then proceeded to quote with
apparent approval the following extract from Cooley's Consti-
tutional Limitations:

"'Where a statute is expressly retroactive,
and the object and effect of it is to correct an
innocent mistake, remedy a mischief, execute the
intention of the parties, and promote justice,
then, both as a matter of right and of public

Honorable O. P. Lockhart, Page 6

policy affecting the peace and welfare of the
community, the law should be sustained.'"

We shall also quote from Cooley's Treatise on
Constitutional Limitations, pp. 772-774:

". . . There is no doubt of the right of
the legislature to pass statutes which reach
back to and change or modify the effect of prior
transactions, provided retrospective laws are
not forbidden, eo nomine, by the State Constitu-
tion, and provided further that no other objec-
tion exists to them than their retrospective
character. Nevertheless, legislation of this
character is exceedingly liable to abuse; . . .
And some of the States have deemed it just and
wise to forbid such laws altogether by their
constitutions." (Underscoring ours)

Mr. Cooley then proceeds to enumerate certain ex-
ceptional situations where retrospective statutes have been
held valid. They follow:

"A retrospective statute curing defects
in legal proceedings where they are in their
nature irregularities only, and do not extend
to matters of jurisdiction, is not void on con-
stitutional grounds, unless expressly forbidden.
Of this class are the statutes to cure irregu-
larities in the assessment of property for taxa-
tion and the levy of taxes thereon; irregular-
ities in the organization or elections of cor-
porations; irregularities in the votes or other
action by municipal corporations, or the like,
where a statutory power has failed of due and
regular execution through the carelessness of
officers, or other causes; irregular proceed-
ings in court, etc.

"The rule applicable to cases of this de-
scription is substantially the following: If
the thing wanting or which failed to be done,
and which constitutes the defect in the proceed-
ings, is something the necessity for which the
legislature might have dispensed with by prior
statute, then it is not beyond the power of the

legislature to dispense with it by subsequent
statute. And if the irregularity consists in
doing some act, or in the mode or manner of do-
ing some act, which the legislature might have
made immaterial by prior law, it is equally com-
petent to make the same immaterial by a subse-
quent law." (pp. 774-776)

The situation confronting us does not fall with-
in any of the named exceptions to the general rule. More-
over, the Texas Constitution forbids retroactive laws eo
nomine.

Section 17, Senate Bill 135, by its express terms,
seeks to direct a new obligation upon the old members of
defined insurance associations. Upon them, it levies new
and unexpected liabilities; it imposes new duties, and at-
taches new disabilities; and all relative to past transac-
tions and considerations. The provision is intended to af-
fect rights which accrued before it became operative.

The power which it seeks to bestow upon the
association is quite beyond the scope of legal legisla-
tion. The granted power in its provisions savors strong-
ly of the power to create new contracts between the associa-
tion and its old members and that without the latter's
consent. The Legislature cannot give its sanction to
acts which will impair existing contracts.

The official files of this department plainly
show the latent evil in the provisions of Section 17, Sen-
ate Bill 135, Unconscionable and unscrupulous operators
were quick to recognize and subsequently utilize its pos-
sibilities. People, who, because of their age, could be
classed as "bad risks" received notices that henceforth
their premium payments would be doubled, trebled, or better,
or that the benefits provided in their certificates or pol-
icies were to be cut to a relatively nominal figure or both
increased premium payments and cut benefits. Thus these
"bad risks" were "frozen-off" the associations' membership
list. To those people who could not meet the new, drastic,
and even prohibitive demands, and, as a consequence, lost
their insurance, the effect was catastrophic because they,
as a whole, were of a class not readily insurable. Sub-
stantial equities were adversely affected.

Honorable O. P. Lockhart, Page 8

Such practices were not of necessity confined to those people alone. Others felt the effects. Many found that the insurance item in their budget was no longer sufficient. Their calculations made at the time they first became members were upset. The practical result was wide spread lapsing of insurance contracts.

This section of Senate Bill 135 cannot be deemed to be in furtherance of equity and good morals or to promote justice, remedy a mischief, nor as one executing the intention of the parties.

The good motive of the Legislature in enacting this law is not to be questioned. The honest acts of the legitimate insurance operators seeking to abide the law is certainly not to be questioned.

Nevertheless, Section 17, Senate Bill 135, comes within the constitutional condemnation of Section 16, Article I, of the Texas Bill of Rights, as being a retroactive law and one impairing the obligation of contracts.

Section 29, Article I, Texas Constitution, (Bill of Rights) provides:

"To guard against transgressions of the high powers herein delegated, we declare that everything in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void." (Underscoring ours)

Accordingly you are advised that Section 17, of Senate Bill 135 of the Acts of the Forty-sixth Legislature, is void and of no force or effect.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED AUG 4, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

By

Wm. J. Fanning
Assistant

By

Grundy Williams

APPROVED
OPINION
COMMITTEE
BY

GW:LM